United States District Court
Southern District of Texas
**ENTERED**
April 25, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-1957 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY | § | |
| and PAUL JOHNSON, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Plaintiff Jane Doe, a student at Defendant Prairie View A&M University who worked in a research center there, alleges that her supervisor, Defendant Paul Johnson, sexually harassed and abused her. In an Amended Complaint, Doe brings claims under Title VII, Title IX, and Texas tort law against the University and a tort claim for sexual assault against Johnson. (Doc. No. 16.) The University and Johnson have each moved to dismiss all the claims against them, with the exception of the Title VII claims against the University. (Doc. No. 19, 25.)

Students holding jobs in the educational institutions that they attend present a special case under Title IX. When such a student endures sexual harassment in her job, she simultaneously experiences harms relating to her employment and to her education. Title VII alone cannot remedy the full range of harms. Accordingly, based on the filings and the applicable law, the Court must deny the University's Motion to Dismiss as to Doe's Title IX claims. Doe's tort claims, however, are barred by state sovereign immunity and by Texas's election of remedies statute. The Court therefore must grant the University's Motion to Dismiss as to Doe's negligence claims and likewise grants Johnson's Motion to Dismiss as to Doe's sexual assault claim.

1

I.  BACKGROUND

The following allegations are drawn from Doe's Amended Complaint and taken as true for the purposes of the pending motions. Doe began attending the University in the spring of 2013. (Doc. No. 16 at 6.) In October 2015, Doe went to an off-campus social event with her aunt, where they met Defendant Johnson. (*Id.*) Following an "extremely friendly" interaction that night, Doe received a Facebook friend request from Johnson, who invited Doe to visit him at the University's agricultural research center where he worked. (*Id.* at 7.) Understanding that Johnson had a job to offer her, and "desperately searching for an on-campus student position," Doe went. (*Id.*) As Doe tells it, Johnson said that she would be a good fit for the job because she was an engineering student, and the job was available only to students at the University. (*Id.* at 8.)

On November 9, 2015, Doe began working for Johnson at the research center. (Doc. No. 16 at 8.) Johnson had complimented Doe on her appearance during the job interview, and those comments developed into unwanted physical contact during her first week in the job. (*Id.* at 10.) Doe alleges that Johnson started hugging her, and he "progressed to fondling Jane's buttocks" when he did so. (*Id.*) Also during Doe's first week, she overheard Johnson and two unnamed men having a vulgar and demeaning discussion about the prospect of sex with her. (*Id.* at 9.)

Doe alleges that Johnson's unwanted touching and demeaning comments soon progressed to outright sexual assault. (Doc. No. 16 at 11.) She says that on November 17, in Johnson's office, he coerced her into oral sex. (*Id.*) Her allegations describe an appalling act that left Doe frightened, humiliated, angry, and distraught. (*Id.* at 11–12.) Sexual harassment, abuse, and intimidation continued in the months that followed. (*Id.* at 12–15.) Doe's complaint details numerous incidents that, each on their own, would permit a sexual harassment claim to withstand a motion to dismiss. Doe also describes the harms that Johnson's conduct caused her. She says

2

she became "an emotional wreck," "worried frantically about her job and her financial wellbeing if Johnson took [the job] from her." (*Id.*) She began to struggle academically as well. (*Id.*)

Doe also began to speak up. On a date she does not specify, she told Johnson that she would no longer endure his behavior. (Doc. No. 16 at 16.) He reacted angrily, according to Doe, and reduced her work hours "almost immediately." (*Id.*) Doe then went to Eric Risch, whom she describes as Johnson's "immediate supervisor," on April 5, 2016. (*Id.*) She told Risch about Johnson reducing her hours but did not tell him about the harassment she had experienced. (*Id.*) This led to an unproductive meeting between Doe, Risch, and Johnson, after which Doe's "work environment with Johnson spiraled downhill," owing to Johnson's belief that Doe had reported his sexual abuse. (*Id.* at 17.)

Doe had not reported Johnson's sexual harassment yet, but she took that step on April 12. (Doc. No. 16 at 18.) She says that she told Risch "everything" that Johnson had done and that Johnson had cut her hours after she finally objected to his behavior. (*Id.*) Risch's response was to note his long friendship with Johnson and to warn Doe about the serious consequences, both for Doe's conscience and for Johnson's wellbeing, if Doe reported him. (*Id.* at 18–19.) Doe also attributes a quote to Risch in which he displays a remarkable blindness to the possibility that Doe genuinely would not welcome Johnson's sexual advances. (*Id.* at 19.)

After Doe reported Johnson to Risch, Johnson's hostility toward her worsened. (Doc. No. 16 at 19.) He again cut her hours and decided not to employ her over the summer, even as he hired different students to work in the research center. (*Id.* at 19–20.) Doe relayed this to Risch on April 29, who again dissuaded Doe from pursuing her complaints against Johnson. (*Id.* at 20.) Risch's only action was to convene a second meeting with Johnson and Doe, which Doe perceived as another attempt to keep her quiet. (*Id.* at 21.)

By this point, Doe says that her "entire school life was falling apart and she was also suffering financially." (Doc. No. 16 at 21.) Despite those difficulties and Risch's efforts at dissuasion, she reported her experiences with Johnson to the University's Title IX coordinator, whom she identifies as "A. Taylor," on May 19, 2016. (*Id.*) Upon hearing Doe's report, Taylor evidently responded that Doe's complaint was far from the first about Johnson and that this "happens all too often here at Prairie View." (*Id.* at 22–23.) Doe's report led to some sort of investigation by the University, about which Doe's Amended Complaint says little, other than the investigation's apparent conclusion three months later that her allegations were unsubstantiated. (*Id.* at 23.)

According to Doe, she endured threats, mockery, and unwarranted discipline from the University after her complaint against Johnson. (Doc. No. 16 at 24.) She says she received anonymous threatening phone calls; humiliating chastisement and derision from University employees; and the unjustified imposition of "Conduct Probation" in December 2016 and then a suspension in March 2017. (*Id.*) Though her suspension was rescinded and Doe still studies at the University, she says that members of the faculty have shunned her since she reported Johnson's misconduct. (*Id.* at 25.)

Doe initiated this lawsuit against the University in June 2017, bringing claims under Title IX and the Fourteenth Amendment via 42 U.S.C. § 1983. (Doc. No. 1.) Following a motion to dismiss from the University, Doe amended her complaint to include claims under Title VII against the University; claims for negligent hiring, training, supervision, and retention against the University; and a claim for sexual assault against Johnson. (Doc. No. 16.) She also withdrew her Section 1983 claim. (*Id.*) The various amendments to Doe's complaint yielded the pending Motions to Dismiss. (Doc. No. 19, 25.)

## II. LEGAL STANDARDS

### a. Rule 12(b)(6)

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, the Federal Rules permit a district court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When ruling on a motion to dismiss, the court "construes facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quotation omitted).

### b. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Lit.*, 668 F.3d 281, 286 (5th Cir. 2012). A court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or

constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted).

III. **ANALYSIS**

The Motions to Dismiss filed by the University and by Johnson focus on Doe's claims under Title IX and Texas tort law. The Court takes these in turn.

a. **Title IX Sexual Harassment**

Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," subject to specific exceptions. *Id.* § 1681(a). This prohibition on discrimination is enforceable through an implied cause of action. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688–89 (1979). Sexual harassment is an actionable form of discrimination under Title IX. *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 75 (1992). Both damages and injunctive relief are available in private suits under Title IX. *Fitzgerald v. Barnstable School Cmte.*, 555 U.S. 246, 255 (2009).

Title VII of the Civil Rights Act of 1964, prohibiting employment discrimination on the basis of sex and other characteristics, also encompasses sexual harassment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64–67 (1986). The University contends that Doe dealt with Johnson as an employee, not as a student, and so her sexual harassment claim should be construed simply as an employment discrimination claim. (Doc. No. 19 at 5.) In its view, this construction would entail dismissal of Doe's Title IX claim for sexual harassment, because Title VII furnishes the exclusive remedy for such harms. (*Id.* at 5–6.)

6

The University's position is based on *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), in which the Fifth Circuit dismissed the claims of an assistant professor denied tenure by the University of Texas Medical Branch. *Id.* at 752. Rather than sue under Title VII, she had sued under Title IX, contending that her denial of tenure constituted sex discrimination by a federally funded educational institution. *Id.* at 752–53. Vacating the jury award in her favor, the Fifth Circuit ruled that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." *Id.* at 753.

Several considerations make *Lakoski* inapposite. Most simply, this case concerns a student whose job on campus was tied to her education, whereas *Lakoski* concerned a professor employed by the institution at issue. For purposes of Title IX sexual harassment claims, courts within and without the Fifth Circuit have distinguished workers who are not students from those who are. *See, e.g.*, *Delgado v. Stegall*, 367 F.3d 668 (7th Cir. 2004), *abrogated on other grounds by Fitzgerald*, 555 U.S. 246 (2009); *Yog v. Tex. Southern Univ.*, 2010 WL 4053766 (S.D. Tex. Aug. 30, 2010), *report and recommendation adopted*, 2010 WL 4053706 (S.D. Tex. Oct. 14, 2010). In *Delgado*, an undergraduate music student was harassed by her voice teacher, for whom she worked as an office assistant. 367 F.3d at 670. Distinguishing *Lakoski*, the Seventh Circuit ruled that "harassment of a student interferes with her educational experience whether or not she is also a part-time employee; the harassment of a nonstudent employee could have no such effect." *Id.* Similarly, in *Yog*, an undergraduate working as a research assistant in her university's biology department repeatedly had to hear inappropriate sexual comments from her supervisor. 2010 WL 4053766 at *1. The court understood her assistantship to be a part of her academic experience. *Id.* at *4. Accordingly, it acknowledged *Lakoski* but declined to apply it, finding that the plaintiff had properly brought her claim under Title IX in her capacity as a student. *Id.* at *4

n.33. Likewise, in the present case, Doe has alleged that she was a student at the time of the harassment; that she obtained the job in furtherance of her academic studies; and that she understood only students were eligible for the job. These allegations put Doe's case beyond the holding of *Lakoski*.[1]

As a student, Doe is at risk of being "denied the benefits of … [her] education program," per 20 U.S.C. § 1681(a), in a way that the professor in *Lakoski* was not. *See Wilborn v. Southern Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1304 (M.D. Ala. 2010) ("Unlike Title IX, Title VII provides no cause of action for discrimination that interferes with an individual's education, and thus cannot be read as preempting such a claim."); Ronna Greff Schneider, *Sexual Harassment and Higher Education*, 65 Texas L. Rev. 525, 551 (1987) ("A nondiscriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that a student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the most from the academic program."). For the professor in *Lakoski* and other non-student

---

[1] Also analogous are cases concerning medical residents. Numerous circuit courts have understood medical residents undergoing sexual harassment as experiencing the denial of educational benefits, not just simple employment discrimination. *See, e.g.*, *Doe v. Mercy Catholic Med. Center*, 850 F.3d 545 (3rd Cir. 2017); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988). Medical residents receive instruction and assessment. Completion of a residency is a prerequisite to licensure in their fields. As such, they are students even as they are employees of the institutions where they work. Doe's job in the research center at the University, as described in Doe's pleadings, does not necessarily share all these educational features. The cases nevertheless support the view that Title IX claims are not precluded in circumstances that blend employment and educational activity.

Invoking the medical resident cases risks confusion because they entail a similar but distinct determination: whether the medical residency program itself is an "education program or activity." A medical resident's Title IX claim might fail either because the residency program is deemed not to be educational or because the resident herself is deemed not to engage with the program in an educational capacity. *See Mercy Catholic*, 850 F.3d at 553–58, 559–60. In the present case, it is not disputed that Johnson's research center is an education program or activity, owing to its association with the University.

employees of federally funded educational institutions, an employment discrimination claim under either statute would yield essentially the same remedy for essentially the same harm. Doe, by contrast, has identified not just Title VII harms like the loss of work hours, but also harms that are beyond what Title VII can remedy. She has alleged that the harassment and the retaliation that she experienced have undermined and inhibited her education in numerous ways. Title VII alone would not account for all these harms, but Title VII and Title IX in tandem can.

A prudential concern predominant in *Lakoski* is also not applicable to the present case. The plaintiff in *Lakoski* had not filed a charge with the Equal Employment Opportunity Commission as required for a Title VII claim and so had not pled one. 66 F.3d at 752–53. The Fifth Circuit was concerned that permitting employment discrimination claims to proceed in such circumstances "would disrupt [Title VII's] carefully balanced remedial scheme." *Id.* at 754. Here, by contrast, Doe filed a charge with the EEOC and has obtained a Right to Sue letter. On this basis, she has pled Title VII claims that the University has not yet challenged. (Doc. No. 16 at 29–30.) Doe's adherence to Title VII's requirements mutes the concern that Title VII's remedial scheme will be disrupted by permitting sexual harassment claims under both statutes to proceed.

Discovery and further litigation will sharpen the facts in this case, clarifying the nature of the job that Doe held, its relationship to her education, and other relevant considerations. Facts may be uncovered that weaken her Title VII claim, her Title IX claim, or both. For now, however, the specificity and scope of her factual allegations make it appropriate for both sexual harassment claims to survive. So too do the Supreme Court's statements on the nature of these statutes. Acknowledging "Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment," the Supreme Court has nevertheless said

9

that "the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975). Of Title IX, it has said that "even if alternative remedies are available and their existence is relevant … this Court repeatedly has recognized that Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination." *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 n.26 (1982). In light of this general guidance and this case's specific facts, dismissal of Doe's sexual harassment claim under Title IX is not appropriate.

### b. Title IX Retaliation

Retaliation against a person complaining of sex discrimination in violation of Title IX is also actionable under Title IX's implied cause of action. *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 173–74 (2005). A plaintiff must show that she engaged in a protected activity under Title IX, that she suffered an adverse action, and that a causal connection exists between the two. *Collins v. Jackson Pub. School Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015); *Lowrey v. Tex. A&M Univ. Sys.*, 11 F. Supp. 2d 895, 912 (S.D. Tex. 1998).

The University challenges the factual allegations supporting each prong of Doe's Title IX retaliation claim.[2] It contends that Doe's repeated complaints to University personnel about

---

[2] In Doe's Amended Complaint, the first section of her Causes of Action addresses Title IX but does not expressly state that she is making a retaliation claim. (Doc. No. 16 at 27–29.) The second section, addressing Title VII, does expressly state a retaliation claim under that statute. (*Id.* at 31.) In general statements elsewhere in the complaint, however, Doe speaks as though she means to bring a Title IX retaliation claim. (*Id.* at 2–3, 17–19.) In its Motion to Dismiss, the University proceeds as though Doe has clearly done so. (Doc. No. 19 at 7–9.) Accordingly, the Court construes her complaint in the same manner.

Relatedly, in Johnson's Motion to Dismiss, he protests that Title XI and Title VII will not support claims against individuals. (Doc. No. 25 at 10.) Whereas Doe's Amended Complaint is somewhat ambiguous about stating a Title IX retaliation claim against the University, there is no suggestion that she means to state Title IX or Title VII claims against Johnson. Doe makes that clear in her response to Johnson's motion. (Doc. No. 26 at 4–5.)

Johnson's conduct should be considered Title VII protected activity, not Title IX. (Doc. No. 19 at 7–9.) It argues that Doe has not adequately pled a "material adverse action," because her suspension eventually was rescinded. (*Id.* at 9.) Finally, it disputes that Doe has sufficiently pled a causal connection between her complaints and the adverse actions she faced. (*Id.*)

In arguing that Doe has failed to identify any Title IX protected activity that is not also considered Title VII protected activity, the University relies on *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997). Lowrey was the women's basketball coach and, for a time, the women's athletic coordinator at a public university. *Id.* at 244. Lowrey had participated in various complaints and investigations concerning the university's noncompliance with Title IX, and she claimed that she faced retaliation as a result: removal from the coordinator position; denial of a promotion; and continued harassment. *Id.* The Fifth Circuit permitted her to make a Title IX retaliation claim. *Id.* at 254. It ruled, however, that under *Lakoski*, her claim would be barred if it were based only on her participation in complaints about employment discrimination at the university, and not complaints about Title IX violations, like the misallocation of resources. *Id.* at 247. Accordingly, she had to show she had engaged in protected activity relating specifically to Title IX. *Id.*

*Lowrey* establishes the general principle that a Title IX retaliation claim may be made even by a plaintiff contending simultaneously that she has experienced employment discrimination in violation of Title VII. Beyond that, however, it has limited application to this case for the same reasons as *Lakoski*. The case of a non-student employee like Lowrey sheds only so much light on the case of a student employee like Doe. As noted above, conduct related and not related to employment cannot be so neatly separated here. When students hold jobs in education programs, their work is intertwined with their educations. To complain of sexual

11

harassment by a supervisor may be, for a student worker, to complain simultaneously of sex discrimination in employment and in an education program.

The University's challenges to Doe's allegations on the other prongs are unpersuasive. Doe alleges that the University imposed unwarranted discipline on her: a "Conduct Probation" and then a suspension. That the suspension was later rescinded does not change that it occurred and had to be endured. The University then questions whether Doe has adequately alleged a causal connection between her complaints and these actions. Doe's Amended Complaint, by narrating the sequence of events with specific dates, yields a cause-and-effect inference. Her allegations concerning Eric Risch and the Title IX coordinator bolster that causal inference. Risch, Johnson's supervisor, repeatedly and strenuously tried to dissuade her from reporting Johnson; the Title IX coordinator said that sexual harassers' avoidance of accountability "happens all too often" at the University. Taken together, and viewed in the most favorable light, these allegations suggest the culture at the University that Doe would buck by reporting Johnson. That culture's reaction is evident in the events that followed. Accordingly, dismissal of Doe's Title IX retaliation claim is not warranted.

### c. Texas Torts

The University argues that the state of Texas has not waived its sovereign immunity for the types of negligence claims that Doe has made against it. (Doc. No. 19 at 10.) Texas has not waived its sovereign immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2). Doe's claims against the University are for negligent hiring, training, supervision, and retention, but they arise from the intentional tort of sexual assault that Johnson allegedly committed. *See Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). Consequently, the state has not waived its sovereign

immunity. Federal enactments can overcome state sovereign immunity. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996). Doe has identified no such enactment that applies to this case, however, so dismissal is required under Rule 12(b)(1).

Johnson argues that Doe's sexual assault claim against him is barred by Texas's election of remedies statute (Doc. No. 25 at 11), under which "[t]he filing of a suit … against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code § 101.106(a). In addition, "[i]f a suit is filed … against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e). The University has so moved. (Doc. No. 19 at 11.)

Doe responds that her claim against Johnson does not arise from the same subject matter as her claims against the University. The former is for his sexual assault; the latter are for the University's failure to investigate and act on her complaints, the derision that University employees directed at her, and other injuries. (Doc. No. 22 at 14–16.)

"A suit against an individual regards the same subject matter as a suit against a governmental entity when it arises out of the same actions and occurrences." *Travis v. City of Grand Prairie, Tex.*, 654 F. App'x 161, 166 (5th Cir. 2016). All the claims in this case arise from Johnson's alleged sexual abuse of Doe. Were it not for his actions, Doe would have no claims against him or against the University. Under similar circumstances, the Fifth Circuit found that the claims against an alleged sexual assaulter and the institution that employed him arose from the same subject matter. *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 737–38 (5th Cir. 2010). The same finding is appropriate here. Under Texas's election of remedies

statute, Doe's choice to initiate her suit against the University requires dismissal of her claim against Johnson.

IV. **CONCLUSION**

Plaintiff Jane Doe has made claims under Title VII, Title IX, and Texas tort law against Defendant Prairie View A&M University and under Texas tort law against Defendant Paul Johnson. Her Title VII claims against the University are unchallenged here and so survive. The University's challenge to her claims for sexual harassment and for retaliation in violation of Title IX fail, but its challenge to her negligence claims is valid. Accordingly, the University's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Johnson's challenge to Doe's sexual assault claim also is valid. Consequently, Johnson's Motion to Dismiss is **GRANTED**. Doe is directed to amend her complaint in keeping with this ruling.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 25th day of April, 2018.

 _____
 HON. KEITH P. ELLISON
 UNITED STATES DISTRICT JUDGE